**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**UNITED STATES OF AMERICA**

**v.** **DOCKET NO. 3:25-CR-14-1**

**CAMERON HUGHES** **DEFENDANT**

# ORDER

On August 17, 2026, this court held a hearing to address a petition filed by the probation service to revoke the defendant's supervised release. In the petition, the probation service alleged that while on supervised release the defendant tested positive for controlled substances without a prescription and that he had a firearm in his home. Because this was a preliminary hearing, the court looked to determine whether there was probable cause to support the government's argument that the defendant committed these violations. Following the evidence presented and argument, the court found probable cause existed that the defendant used controlled substances while on supervision but took under advisement the question related to the firearm. After considering the matter further, the court finds probable cause does not exist to show the defendant had possession of the firearm and thus denies the petition as to that allegation.

At the hearing the evidence presented showed that during an inspection of Defendant's home on July 28, 2026, the probation officer discovered a handgun in a closet of a bedroom that the defendant and his wife were using as a storage room. When the defendant was convicted of his underlying offense (wire fraud) and began his sentence approximately one year ago, the couple lost their home. As a result, the defendant's wife put their belongings in her father's home and her sister's home. The father then passed away, and the defendant's wife rented a storage unit, removing both their things and those of her deceased father into the unit. Their things included the

handgun at issue. The wife purchased the handgun in 2022 and kept it stored in a box. Once the defendant was released, the couple was able to find a new home and had friends and family help move their belongings from the storage unit to their home.

Importantly, the defendant himself did not help move anything into the new home because he had a job at Chick-fil-A, and it was impractical for him to go with his wife who often had to leave the storage unit on Stateline drive in Southaven and drive across the state line into Tennessee where her husband could not go. The wife had approximately six or eight friends and family who helped move the items from the storage unit mainly into the bedroom the couple used as a storage room. This was not the bedroom where the defendant or anyone else slept. During the hearing, defense counsel played a video showing the room almost entirely filled with boxes, clothes, etc. The video made it clear the room was filled with the items the wife described, and the probation officer found the gun on the shelf in this room. While the defendant was not found physically in possession of the gun, the government argued he had constructive possession of it.

"Constructive possession is 'defined as ownership, dominion, or control over the contraband itself or dominion or control over the premises or vehicle in which the contraband is concealed.'" *United States v. Hill*, 71 F.3d 875 (5th Cir. 1995) (unpublished) (quoting *United States v. Wright*, 24 F.3d 732, 734 (5th Cir. 1994)). "However, ownership or control, without knowledge, will not support a conviction based on constructive possession." *Id.* (citing *United States v. Freeze*, 707 F.2d 132, 136 (5th Cir. 1983)). As a result, the court looked to determine whether there was probable cause to find the defendant knew the gun was in the storage/bedroom.

The government had no evidence or testimony other than to show the gun was found in the home. There was no dispute the gun was registered in the wife's name. There was nothing to indicate the defendant ever used the gun or kept it in his own room or near his bed, desk, etc. There

was a room the couple kept for the defendant as a sort of office or television room, but this room was on the opposite side of the house from the storage room where the gun was found.

Defense counsel, on the other hand, put the defendant's wife on the stand who testified clearly and was entirely credible to the court. She explained that following her husband's conviction and release and the death of her father, the gun was simply forgotten and one of her family or friends had inadvertently moved it to their new home. Based on all of the evidence including the wife's compelling testimony, the court is convinced the defendant did not know it was there. This is not to say that in the future a supervisee can simply say he did not know a gun was in his home. The facts of this case with the loss of the couple's home and subsequent death of the father created an exceptionally unusual situation the court thinks is unlikely to occur again.

Accordingly, while the gun was found in Defendant's home, there is insufficient evidence that he knew it was present, and thus, the petition for revocation as to that issue is hereby **DENIED.**

**SO ORDERED**, this the 18th day of August, 2026.

**/s/ David A. Sanders**
**UNITED STATES MAGISTRATE JUDGE**